TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
LANA MORTON OWENS (Cal. Bar No. 233831)
Assistant United States Attorney
Deputy Chief, National Security Division
JENNA W. LONG (Cal. Bar. No. 332192)
Assistant United States Attorney
National Security Division
SEBASTIAN BELLM (Cal. Bar No. 359407)
Assistant United States Attorney
General Crimes Section, Criminal Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-8692/3547/0119
     Facsimile:  (213) 894-2927
     E-mail:     lana.owens@usdoj.gov
                 jenna.long@usdoj.gov
                 sebastian.bellm@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-CR-731(A)-JFW-3 |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION FOR DEFENDANT YACHUA MAURICIO FLORES; DECLARATION OF LANA MORTON OWENS; EXHIBIT A; AGREEMENT REGARDING RESTITUTION |
| v. | |
| ADAM CHARLES PALERMO ET AL., | |
| Defendants. | Hearing Date: July 6, 2026 Hearing Time: 8:00 a.m. Location:   Courtroom of the Hon. John F. Walter |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jenna W. Long, Lana

Morton Owens, and Sebastian Bellm, hereby files its sentencing position for defendant Yachua Mauricio Flores.

This sentencing position is based upon the attached memorandum of points and authorities, the declaration of Lana Morton Owens and exhibit A attached hereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 23, 2026                    Respectfully submitted,

                                        TODD BLANCHE
                                        Acting Attorney General
                                        BILAL A. ESSAYLI
                                        First Assistant United States Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division

                                             /s/ *Jenna W. Long*
                                        JENNA W. LONG
                                        LANA MORTON OWENS
                                        SEBASTIAN BELLM
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

**Contents**

TABLE OF AUTHORITIES..................................................ii

TABLE OF EXHIBITS.......................**Error! Bookmark not defined.**

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION...................................................1

II.   DEFENDANTS OFFENSE.............................................1

III.  GUIDELINES CALCULATION.........................................4

IV.   GOVERNMENT'S RECOMMENDED SENTENCE..............................5

      A.    A Substantial Custodial Sentence is Appropriate in
            Light of the Nature and Circumstances of the Offense §
            3553(a)(1)..............................................5

      B.    History and Characteristics of Defendant, § 3553(a)(1)....6

      C.    Need for Deterrence, to Protect the Public, and to
            Promote Respect for the Law, § 3553(a)(2)................7

      D.    Need for the Sentence to Avoid Unwarranted
            Disparities, § 3553(a)(6)...............................8

      E.    Imposition of Supervised Release........................8

      F.    Restitution.............................................9

      G.    Fine, Forfeiture, and Special Assessments...............10

V.    CONCLUSION....................................................11

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**CASES**

Gall v. United States,
        552 U.S. 38 (2007)..............................................8

United States v. Blinkinsop,
        606 F.3d 1110 (9th Cir. 2010)..................................8

United States v. Saeteurn,
        504 F.3d 1175 (9th Cir. 2007)..................................8

United States v. Treadwell,
        593 F.3d 990 (9th Cir. 2010)...................................7

United States v. Weber,
        451 F.3d 552 (9th Cir. 2006)...................................8

**STATUTES**

18 U.S.C. § 231.......................................................1

18 U.S.C. § 232.......................................................2

18 U.S.C. § 3553......................................................5

18 U.S.C. § 3583......................................................8

**OTHER AUTHORITIES**

U.S.S.G. § 3E1.1......................................................4

U.S.S.G. § 4C1.1......................................................4

U.S.S.G. § 5A......................................................4, 5

U.S.S.G. § 5D1.1......................................................8

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.   INTRODUCTION**

Defendant Yachua Mauricio Flores (hereinafter, "defendant") joined a civil disorder that erupted in downtown Los Angeles on June 8, 2025.  Defendant brought lighter fluid with him, prepared to use it, and when he saw his opportunity, he poured two bottles of lighter fluid on a law enforcement vehicle already on fire, feet away from officers fleeing from being pelted by rocks and other objects. Defendant now awaits sentencing after pleading guilty to count seven of the superseding indictment, charging defendant obstructing, impeding, or interfering with a law enforcement officer during a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

The government agrees with the United States Probation and Pretrial Services Office's ("Probation") Pretrial Services Report ("PSR") including the United States Sentencing Guidelines calculations.  Respectfully, the government recommends a within Guidelines sentence of 40 months' imprisonment; a three-year term of supervised release; that defendant be ordered to pay restitution in the amount of $253,415.24;[1] and the mandatory $100 special assessment.

**II.   DEFENDANTS OFFENSE**

In early June 2025, federal law enforcement officials began conducting immigration enforcement operations throughout the Los Angeles, California area.  (Complaint filed in 2:25-MJ-6126-DUTY, Dkt. No. 1, also appearing at Dkt. No. 155-2, ¶¶ 4, 9.)  During and

---

[1] On or about June 22, 2026 the parties met and conferred regarding restitution and defendant does not object to this restitution amount.

those operations, protests occurred in and around downtown Los Angeles, California.  (Id.)  While many of the protestors peacefully exercised their First Amendment rights, some individuals directly engaged in violent actions to obstruct, impede, or interfere with law enforcement officers.  (Id. ¶¶ 4, 9-11.)  Many of those actions occurred during a civil disorder as defined by 18 U.S.C. § 232(1), and obstructed, delayed, and adversely obstructed commerce, the movement of articles and commodities in commerce on June 8, 2025, in the vicinity of the United States Highway 101 Main Street overpass. (Id. ¶ 12; Dkt. No. 276, Presentence Investigation Report filed June 1, 2026 (hereinafter "PSR") ¶¶ 21-24.)  During the civil unrest on June 8, 2025, multiple California Highway Patrol ("CHP") vehicles were damaged by rocks, debris, thrown scooters, and lit on fire, while CHP officers had to remain under the overpass for safety. (Id.)  The photograph below depicts this civil disorder.



(Dkt. 155-2 ¶ 12.)

Defendant was amongst the group engaging in this civil disorder, including around 7:30 p.m. to 8:00 p.m., when some of the worst civil disorder occurred.  (PSR ¶ 25.)  At this time one CHP vehicle, near

the overpass, and near the officers who were under the overpass for safety from objects being thrown from above, was already on fire. (PSR ¶¶ 25-26.)  Defendant knew the vehicle was on fire and took out two bottles filled with lighter fluid that he had brought with him to the civil disorder.  (PSR ¶ 26.)  Defendant poured one bottle of the lighter fluid on the flames, causing them to grow, then after helping another individual next to him aim their own lit liquid on the same fire, defendant poured his second bottle of lighter fluid on the same on fire vehicle.  (PSR ¶¶ 26-27.)  A few minutes later defendant returned to the same part of the overpass railing, this time carrying an electric scooter and threw the electric scooter down on those same burning CHP vehicles below.  (PSR ¶ 27.)

As the sun set, law enforcement was able to clear the civil disorder from the overpass.  Defendant didn't leave the area though; he moved with the civil disorder.  While holding a chunk of brick or rock, defendant encouraged others to join in riot activity nearby. (PSR ¶ 28.)  Then, later at night, defendant burned an American flag surrounded by a crowd, all while yelling anti-government and anti-immigration policy rhetoric.  (PSR ¶ 29.)

This civil disorder stood apart in its magnitude.  A sergeant in the California Highway Patrol with nearly three-decades in law enforcement wrote a statement about how this incident stood apart and the impact it had on him and his son, attached as **Exhibit A**. (Declaration of Lana Morton Owens ("Owens Decl.") ¶ 2; PSR ¶¶ 33-35.) His experience underscores how violent this incident became and the deep toll it took on all law enforcement present.

3

On April 27, 2026, defendant entered a plea of guilty to count seven of the superseding indictment pursuant to a plea agreement. (Dkt. Nos. 220, 243.)

Defendant is a 23-year-old Los Angeles resident.  (PSR ¶ 77, 79.)  Defendant's only criminal history before the instant offense included unlicensed driving and possession of nitrous oxide, misdemeanors.  (PSR ¶¶ 68-69.)  In addition to defendant's 2025 nitrous oxide possession for which he received diversion, defendant has two prior arrests for the same.  (PSR ¶¶ 74, 75.)

## III. GUIDELINES CALCULATION

The parties and Probation agree, defendant's base offense level is 24 under U.S.S.G. § 2K1.4(a)(1)(A),[2] as a substantial risk of death or serious bodily injury was created knowingly, which is plain by the danger of a vehicle on fire.  (Dkt. No. 220 ¶ 12; PSR ¶¶ 44-47.)  Defendant is entitled to a three-level reduction in offense level because of his timely acceptance of responsibility.  (PSR ¶¶ 61-62.)  U.S.S.G. § 3E1.1(a), (b).

Defendant is in criminal history category I with zero criminal history points.  (PSR ¶¶ 55-56.)  U.S.S.G. § 5A.  Despite defendant's lack of criminal history points, defendant is ineligible for the zero-point offender reduction under U.S.S.G. § 4C1.1 because defendant used violence[3] in connection with the offense and he

---

[2] Pursuant to U.S.S.G. § 2X5.1(a), when no guideline expressly applies to a statute the one most analogous should apply.  Here, Probation and the parties agree that would be arson under U.S.S.G. § 2K1.4.

[3] "Used violence" is not defined by the Guideline or its application notes.  "Crime of violence" as defined by U.S.S.G. § 4B1.2(a) includes any crime including the "use, attempted use, or threatened use of physical force against the person of another" or unlawful possession of a firearm described in 26 U.S.C. § 5845(a).

*(footnote cont'd on next page)*

possessed a dangerous weapon.  (PSR ¶ 58-60.)  U.S.S.G. § 4C1.1(3), (7), respectively.

In sum, the total offense level is 21, which, with a criminal history category of I, yields a Guidelines range of 37 to 46 months' imprisonment.  U.S.S.G. § 5A.

**IV.   GOVERNMENT'S RECOMMENDED SENTENCE**

The government recommends that the Court sentence defendant to a within Guidelines sentence: 40 months' imprisonment; a three-year term of supervised release; no fine; $253,415.24 restitution; and the mandatory $100 special assessment.  This sentence is appropriate, reasonable, and not greater than necessary to account for the factors the Court must consider under 18 U.S.C. § 3553(a).

> **A.   A Substantial Custodial Sentence is Appropriate in Light of the Nature and Circumstances of the Offense § 3553(a)(1)**

As an initial matter, a substantial custodial sentence -- which the government's recommended sentence reflects -- is necessary to reflect the gravity of defendant's crimes and the danger he inflicted.  This is underscored by the victim impact statement.  (See Ex. A.)  A lower, or below-Guidelines sentence, fails to consider the seriousness of defendant's offenses.  Arson is plainly a serious offense, specifically, adding an accelerant to an already on fire vehicle is especially serious because it amplifies the danger of the fire by increasing it.  Defendant poured the accelerant he brought right on the hood of the car, over the very large engine and mechanical parts below the hood that if damaged sufficiently may not just ignite, but explode.  The vehicle defendant and others targeted

---

Here, defendant possession such a firearm and threw that destructive device -- after lighting it -- towards Sheriff's Deputies defendant admitted he was trying to obstruct, interfere with, or impede.

was also the closest to the overpass, which is where defendant knew several CHP officers were under cover from the objects that the crowd would throw every time an officer came out.  This also inhibited the officers' efforts to extinguish the flames before and after defendant poured the accelerant.  Defendant enhanced an already dangerous situation, and the fact that no one was injured or killed is pure luck, and not because defendant or any others showed restraint.

**B.    History and Characteristics of Defendant, § 3553(a)(1)**

The instant offense will be defendant's first criminal conviction, which his criminal history category accounts for. However, they are not his first criminal contacts.  The Court should not ignore that has prior arrests that evince substance abuse.  (PSR ¶¶ 69, 74-75.)  It is necessary to balance all of defendant's history, including a challenging childhood and upbringing that defense counsel shared with the government.[4]  While the government is sympathetic to defendant's struggles, that sympathy does not justify a below-Guidelines sentence.  Rather, it justifies the government's recommended sentence that correctly accounts for the serious nature of defendant's offenses.  It is because of these challenges, in mitigation, that the government is not seeking a higher sentence and resolved the matter in a way that allowed for a more lenient sentence.  Further, defendant's history with substance abuse does not mitigate the danger he posed to the community on June 8, 2025, or any other day.  Indeed, defendant was in a diversion program when he

---

[4] According to the PSR, defendant has not yet been interviewed and therefore the background information included is relatively limited and unverified, but the government has taken into account information shared by counsel in crafting the government's recommendation, including struggles defendant faced while growing up. (See PSR ¶ 76.)

6

committed the instant offense.  It also underscores the need for supervision upon defendant's release from custody.  While defendant's struggles add context to the events surrounding defendant's offense, they do not erase defendant's chosen actions, or the danger he created and amplified.  A sentence of 40 months correctly balances defendant's history and characteristics with the nature and circumstances of the offense.

C.    **Need for Deterrence, to Protect the Public, and to Promote Respect for the Law, § 3553(a)(2)**

Any sentence below Guidelines, will not promote respect for the law nor deter defendant or others from engaging in the same exceedingly dangerous behavior.  On June 8, 2025, defendant could have peacefully protested, as many did; but instead, defendant carried accelerant and when he saw an opportunity to use it on a fire near officers he jumped at the opportunity.  Defendant's conduct warrants a sentence that will deter defendant specifically, and -- importantly -- others generally, from resorting to violent acts and endangering others in times of civil disorder.

A substantial sentence would also promote respect for the law. The law draws a line that prohibits violent, dangerous conduct like defendant's is necessary to protect the fundamental rights of everyone in the community and those that choose to demonstrate and protest lawfully.  A substantial custodial sentence would send the message that when someone crosses the line into unlawful and violent civil disorder, especially when that conduct endangers members of the community, it will be met with significant consequences.

**D.    Need for the Sentence to Avoid Unwarranted Disparities, § 3553(a)(6)**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  The best way to ensure consistent sentences for similarly-situated defendants across courtrooms, districts, and the country is to apply the sentencing guidelines uniformly.  United States v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007).  Here, under correctly calculated Guidelines range, which the parties agree apply, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a sentence between 37 to 46 months' imprisonment.  A sentence of 40 months is appropriate in this case and avoids unwarranted sentencing disparity.

**E.    Imposition of Supervised Release**

District courts have wide latitude in imposing conditions of supervised release.  United States v. Blinkinsop, 606 F.3d 1110, 1118 (9th Cir. 2010); United States v. Weber, 451 F.3d 552, 557 (9th Cir. 2006).  A sentencing court even has broad discretion to impose conditions of supervised release not named by statute.  18 U.S.C. § 3583(d) (district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other

8

condition it considers to be appropriate"). Of particular note, is that in cases where a defendant "is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release be imposed." See U.S.S.G. § 5D1.1, cmt. n.3.

The imposition of the maximum three-year term of supervised release is crucial to incentivizing defendant to refrain from returning to criminal conduct, especially given the gravity of the conduct involved. This Court's close supervision will be necessary to hold him accountable for his actions and to effectively protect the public from any future crimes of defendant. Given defendant's history with substance abuse, evidenced by his three criminal contacts related to possession of nitrous oxide, conditions requiring defendant to abstain from controlled substances (including state authorized marijuana) and testing to ensure compliance are necessary.

**F.    Restitution**

Under § 3663A, the Court must order full restitution without regard to defendant's economic situation. 18 U.S.C.§ 3664(f)(1)(A). The Court shall order full and immediate payment of restitution, unless, in the interest of justice, the Court provides for payment on a date certain or in installments. 18 U.S.C. § 3572(d)(1). "Immediate payment of restitution is the general rule." See United States v. Martin, 278 F.3d 988, 1006 (9th Cir. 2002) (finding that the district court did not err in following the general rule because it had information regarding the defendant's financial resources that it had "presumably considered and found insufficient to warrant periodic payments."); see generally United States v. Ross, 310 Fed. Appx. 160, 162 (9th Cir. 2009) (finding that "immediate repayment is the rule" but that "[e]xceptions may be made in the interests of

justice, such as when the defendant is not able to make more than nominal periodic payments," and the defendant carries the burden of proving such inability).

Here, three vehicles, as shown in the picture above, were exposed and targeted by the individuals on the overpass, including defendant and his co-defendant's, with fire, rocks, scooters, street signs, and other objects.  They sustained such a large level of damage they were considered totaled.  In sum, according to the CHP, the total damage sustained across these three vehicles is $253,415.24.  (Long Decl. ¶ 3.)  As such, defendant should be ordered to pay restitution in that amount, jointly and severally liable with any other co-defendants the Court orders to pay restation.

Defendant, through his counsel, does not contest the restitution amount.  Defendant should be held jointly liable for the restitution, and any order should ensure that CHP may only recover the ordered amount.

### G.   Fine, Forfeiture, and Special Assessments

The government agrees with Probation that defendant is unable to pay a fine, and therefore that no fine should be imposed.  (PSR ¶¶ 93, 95; Dkt. No. 275 at 1.)  Defendant must pay a mandatory $100 special assessment for each count of conviction.  (PSR ¶ 106.)  The indictment did not include criminal forfeiture allegations, and the government is not pursuing criminal forfeiture.

//

**V.    CONCLUSION**

For the foregoing reasons, the Court should impose a within Guidelines sentence: 40 months' imprisonment; three years' supervised release; no fine; restitution in the amount of $253,415.24; and a $100 special assessment.  The government submits that this sentence is "sufficient, but not greater than necessary, to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2)."  18 U.S.C. § 3553(a).

Dated: June 23, 2026                    Respectfully submitted,

                                        TODD BLANCHE
                                        Acting Attorney General

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                            /s/ *Jenna W. Long*
                                        JENNA W. LONG
                                        LANA MORTON OWENS
                                        SEBASTIAN BELLM
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

11

## DECLARATION OF LANA MORTON OWENS

I, Lana Morton Owens, declare as follows:

1.    I am an Assistant United States Attorney ("AUSA") in the Central District of California and am assigned to represent the government in United States v. Palermo et al., CR No. CR-731(A)-JFW-3.

2.    Attached as **Exhibit A** is a true and correct copy of a victim impact statement written and submitted by California Highway Patrol Sergeant P.R. who was present during the charged offense on June 8, 2025.

3.    I have reviewed materials provided by the California Highway Patrol regarding damage to their property -- vehicles – during the charged offense.  According to California Highway Patrol, the three vehicles damaged were totaled and the cost of the damage sustained was $80,972.64, $86,221.30, and $86,221.30.   The total loss amount is $253,415.24.

4.    On or about June 17, 2026, the government provided the defense with restitution calculations provided by CHP. On or about June 22, 2026, I conferred with defense counsel Kenneth Reed.  He confirmed that the defendant does not object to the government's restitution calculations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on June 23, 2026.

_____
LANA MORTON OWENS
Assistant United States Attorney
National Security Division