TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
LANA MORTON OWENS (Cal. Bar No. 233831)
Assistant United States Attorney
Deputy Chief, National Security Division
JENNA W. LONG (Cal. Bar. No. 332192)
Assistant United States Attorney
National Security Division
SEBASTIAN BELLM (Cal. Bar No. 359407)
Assistant United States Attorney
General Crimes Section, Criminal Division
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-8692/3547/0119
        Facsimile:  (213) 894-2927
        E-mail:     lana.owens@usdoj.gov
                    jenna.long@usdoj.gov
                    sebastian.bellm@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-CR-731(B)-JFW-4 |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION FOR DEFENDANT RONALD ALEXIS COREAS; DECLARATION OF SEBASTIAN BELLM; EXHIBIT A; AGREEMENT REGARDING RESTITUTION |
| v. | |
| ADAM CHARLES PALERMO ET AL., | |
| Defendants. | Hearing Date: July 13, 2026 |
| | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jenna W. Long, Lana

Morton Owens, and Sebastian Bellm, hereby files its sentencing position for defendant Ronald Alexis Coreas.

This sentencing position is based upon the attached memorandum of points and authorities, the declaration of Sebastian Bellm and Exhibit A attached hereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 29, 2026                    Respectfully submitted,

                                        TODD BLANCHE
                                        Acting Attorney General
                                        BILAL A. ESSAYLI
                                        First Assistant United States Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division

                                             /s/ *Sebastian Bellm*
                                        JENNA W. LONG
                                        LANA MORTON OWENS
                                        SEBASTIAN BELLM
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

**Contents**

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   DEFENDANTS OFFENSE............................................1

III.  GUIDELINES CALCULATION.......................................3

IV.   GOVERNMENT'S RECOMMENDED SENTENCE............................4

      A.    Nature and Circumstances of the Offense................5

      B.    Defendant's History and Characteristics................5

      C.    Need for Deterrence, to Protect the Public, and to
            Promote Respect for the Law............................6

      D.    Terms of Probation.....................................6

      E.    Restitution............................................8

      F.    Fine, Forfeiture, and Special Assessments..............9

V.    CONCLUSION...................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Ronald Alexis Coreas (hereinafter, "defendant") joined a civil disorder that erupted in downtown Los Angeles on June 8, 2025. Defendant climbed up on a sign on the overpass overlooking United States Highway 101 (the "101") and dropped and threw several large rocks at California Highway Patrol ("CHP") officers on the highway below. For his conduct, defendant pleaded guilty to a single-count First Superseding Information charging him with Assault on a Person Assisting a Federal Officer, in violation of 18 U.S.C. § 111(a)(1).

The government agrees with the United States Probation and Pretrial Services Office's ("Probation") Pretrial Services Report ("PSR") including the United States Sentencing Guidelines calculations. The government respectfully recommends a sentence of four years' probation; that defendant be ordered to pay restitution in the amount of $126,707.62;[1] and the mandatory $25 special assessment.

### II.   DEFENDANTS OFFENSE

In early June 2025, federal law enforcement officials began conducting immigration enforcement operations throughout the Los Angeles, California area. (Complaint filed in 2:25-MJ-6126-DUTY, Dkt. No. 1, also appearing at Dkt. No. 155-2, ¶¶ 4, 9.) During those operations, protests occurred in and around downtown Los Angeles, California. (Id.) While many of the protestors peacefully exercised

---

[1] On June 29, 2026 the parties met and conferred regarding restitution and defendant does not object to this restitution amount.

their First Amendment rights, some individuals directly engaged in violent actions and the assault of law enforcement officers. (Id. ¶¶ 4, 9-11.)

Many of those actions occurred during a civil disorder as defined by 18 U.S.C. § 232(1), during which CHP responded to assist federal law enforcement in their official duties. (Coreas Plea Agreement ¶ 10, Dkt. No. 221; Presentence Investigation Report filed June 8, 2026 (hereinafter "PSR") ¶¶ 19-21.) After protesters walked onto, and blocked all lanes of southbound traffic on the 101, CHP officers attempted to re-open the highway to traffic. (Id.) At this time, a large group of people--including defendant-—amassed on the Main Street overpass of the 101. (Id.) During the civil unrest on June 8, 2025, multiple CHP vehicles were damaged by rocks, debris, thrown scooters, and lit on fire, while CHP officers had to remain under the overpass for safety. (Id.) The photograph below depicts this civil disorder.



(Dkt. 155-2 ¶ 12.)

2

Defendant was amongst the group engaging in this civil disorder, including around 7:20 p.m. to 8:00 p.m., when some of the worst civil disorder occurred. (PSR ¶¶ 22-23.) Defendant climbed up on the sign on the overpass and a large rock at a CHP vehicle. (Id.) Defendant carried multiple rocks over to the railing of the overpass and threw the rocks onto the 101 below, knowing that there were CHP officers mere feet away from where he was throwing rocks.

Around 8:00 p.m., law enforcement was able to clear the civil disorder from the overpass. Defendant didn't leave the area though; he moved with the civil disorder. Defendant and co-defendant Junior Roldan were later arrested by the Los Angeles Police Department after engaging in further civil unrest. (PSR ¶ 23.)

The June 8 civil disorder stood apart in its magnitude. A sergeant in the California Highway Patrol with nearly three-decades in law enforcement wrote a statement about how this incident stood apart and the impact it had on him and his son, attached as **Exhibit A.** (Declaration of Sebastian Bellm ("Bellm Decl.") ¶ 2; PSR ¶¶ 24-29.)  His experience underscores how violent this incident became and the deep toll it took on all law enforcement present.

On April 27, 2026, defendant entered a plea of guilty to the single-count First Superseding Information pursuant to a plea agreement. (Dkt. Nos. 221, 244.)

**III. GUIDELINES CALCULATION**

The parties and Probation agree that for defendant's offense of assaulting a person assisting a federal officer, defendant's base offense level is 10 under U.S.S.G. § 2A2.4(a). (Coreas Plea Agreement ¶ 12; PSR ¶¶ 36-47.) Because defendant used a dangerous weapon in the commission of this offense—-namely multiple large rocks—-a three-

3

level increase applies under U.S.S.G. § 2A2.4(b)(1)(B). (Id.) After a two-level reduction in offense level due for defendant's timely acceptance of responsibility under U.S.S.G. § 3E1.1(a), defendant's total offense level is 11. (Id.)

Defendant is in criminal history category I with zero criminal history points. (PSR ¶¶ 52-53.) U.S.S.G. § 5A. Despite defendant's lack of criminal history points, defendant is ineligible for the zero-point offender reduction under U.S.S.G. § 4C1.1 because defendant used violence[2] in connection with the offense. U.S.S.G. § 4C1.1(3).

With a total offense level of 11 and a criminal history category of I, the applicable Guidelines range is 8 to 12 months' imprisonment. U.S.S.G. § 5A.

**IV.    GOVERNMENT'S RECOMMENDED SENTENCE**

The government recommends that the Court sentence defendant to a below-Guidelines' sentence of 4 years' probation, $126,707.62 restitution, and the mandatory $25 special assessment. The government submits that all fines should be waived given the agreed restitution. This sentence is appropriate, reasonable, and not greater than necessary to account for the factors the Court must consider under 18 U.S.C. § 3553(a).

---

[2] "Used violence" is not defined by the Guideline or its application notes. "Crime of violence" as defined by U.S.S.G. § 4B1.2(a) includes any crime including the "use, attempted use, or threatened use of physical force against the person of another." Here, defendant threw large rocks at CHP officers "in intending and attempting to inflict injury on them, and intending to demonstrate his ability to inflict injury on them." (Coreas Plea Agreement ¶ 10.) Defendant further "knew the rocks thrown were capable of causing death or serious bodily injury to the officers." (Id.)

### A.    Nature and Circumstances of the Offense

Defendant pleaded guilty to misdemeanor assault on a person assisting a federal officer. Defendant admits to carrying multiple large rocks to the railing of the overpass and then throwing them at CHP officers on the highway below who were seeking safety under the cover of the overpass. Multiple CHP vehicles were destroyed during the civil disorder. In addition to the damage to the vehicles, defendant further admits that he knew the rocks were capable of causing death or serious bodily injury to the officers themselves. The offense is serious and would traditionally warrant a Guidelines sentence; however, in light of the totality of the circumstances, the government submits that a probationary sentence is appropriate in this case.

### B.    Defendant's History and Characteristics

The instant offense will be defendant's first criminal conviction, which is accounted for in his criminal history category. However, they are not his first criminal contacts. The Court should not ignore prior arrests in fashioning an appropriate sentence.

As noted in the PSR, defendant has been enrolled in classes and treatment related to mental health. (PSR ¶ 82.) Defendant reported "that he enjoys attending counseling and that it is helping him manage his emotions, sobriety, and assisting him with keeping a positive outlook." (PSR ¶ 83.) Defendant further stated that he was struggling with sobriety "until he started attending formal treatment." (PSR ¶ 84.) These facts all support the need for a probationary sentence to support the defendant's continued recovery. A sentence of a four-year term of probation correctly balances

defendant's history and characteristics with the nature and circumstances of the offense.

**C.    Need for Deterrence, to Protect the Public, and to Promote Respect for the Law**

A sentence including a four-year term of probation will sufficiently promote respect for the law and deter defendant or others from engaging in the same dangerous behavior in the future. On June 8, 2025, defendant could have peacefully protested, as many did; but instead, defendant threw rocks at CHP officers and vehicles. He also carried numerous rocks to the railing with the intent that he or others throw them onto the highway below. Defendant's conduct warrants a sentence that will deter defendant specifically, and -- importantly -- others generally, from resorting to violent acts and endangering others in times of civil disorder.

**D.    Terms of Probation**

Here, because the offense is a misdemeanor, the Court can sentence defendant up to five years' probation.  18 U.S.C. § 3561(c)(2).  For the reasons stated above, a four-year term of probation is an appropriate sentence after considering the applicable § 3553(a) factors.  District courts have wide latitude in imposing conditions of supervised release. United States v. Blinkinsop, 606 F.3d 1110, 1118 (9th Cir. 2010); United States v. Weber, 451 F.3d 552, 557 (9th Cir. 2006). A sentencing court even has broad discretion to impose conditions of supervised release not named by statute.  18 U.S.C. § 3583(d) (district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate").

This Court's supervision will be necessary to hold defendant accountable for his actions and to effectively protect the public from any future crimes of defendant.  Given defendant's history with mental health and substance abuse, as noted in the PSR, conditions requiring defendant to abstain from controlled substances (including state authorized marijuana) and testing to ensure compliance are necessary.

Additionally, pursuant to the plea agreement, defendant agrees to and does not oppose the imposition of the following conditions of probation or supervised release:

(1)  Perform 200 hours of community service as directed by the United States Probation and Pretrial Services Office.

(2)  Participate in a program of drug or alcohol abuse treatment, including during testing and counseling, as directed by the United States Probation and Pretrial Services Office. The program shall consist of outpatient treatment but may be modified to inpatient treatment at the discretion of the United States Probation and Pretrial Services Office. Coreas agrees to, and shall sign waivers necessary to effectuate, reciprocal release of information between probation officer and the treatment provider and Coreas may be required to contribute to costs of services rendered in an amount to be determined by the United States Probation and Pretrial Services Office, based on ability to pay.

(3)  Participate in mental health treatment, including counseling, as directed by the United States Probation and Pretrial Services Office. Coreas agrees to, and shall sign waivers necessary to effectuate, reciprocal release of information between probation officer and the treatment provider and Coreas may be required to contribute to costs of services rendered in an amount to be determined by the United States Probation and Pretrial Services Office, based on ability to pay.

(4) Must not communicate with, interact with, associate with, or otherwise affiliate with anyone known to Coreas to be a member of or known to participate in the criminal activity of a street gang, except for Coreas' family members, unless given permission by the probation officer.

(5) Coreas shall not knowingly come within 100 feet of a federal building or within 100 feet of a federal law enforcement officer engaged in the performance of his or her official duties for an unlawful purpose or with the intent to protest, harass, or cause a disturbance, without prior permission of Pretrial Services. Notwithstanding the prior sentence, Coreas is permitted to enter a federal building for legitimate business or governmental purposes. However, Coreas must adhere to the building's rules and regulations at all times and follow the commands of any federal employee or officer, and Coreas must leave the building immediately, and without a disturbance, if directed by a federal employee or officer, or those assisting federal employees or officers.

(Coreas Plea Agreement PSR ¶ 2(m)(i)-(v); PSR ¶ 5(iii)(1)-(5).)

### E.    Restitution

Under § 3663A, the Court must order full restitution without regard to defendant's economic situation. 18 U.S.C.§ 3664(f)(1)(A). The Court shall order full and immediate payment of restitution, unless, in the interest of justice, the Court provides for payment on a date certain or in installments. 18 U.S.C. § 3572(d)(1). "Immediate payment of restitution is the general rule." See United States v. Martin, 278 F.3d 988, 1006 (9th Cir. 2002) (finding that the district court did not err in following the general rule because it had information regarding the defendant's financial resources that it had "presumably considered and found insufficient to warrant periodic payments."); see generally United States v. Ross, 310 Fed. Appx. 160, 162 (9th Cir. 2009) (finding that "immediate repayment is the rule" but that "[e]xceptions may be made in the interests of justice, such as when the defendant is not able to make more than nominal periodic payments," and the defendant carries the burden of proving such inability).

8

Here, three vehicles, as shown in the picture above, were exposed and targeted by the individuals on the overpass, including defendant and his co-defendant's, with fire, rocks, scooters, street signs, and other objects. The damage to the vehicles was so severe to consider the cars a total loss. In sum, according to the CHP, the total damage sustained across these three vehicles is $253,415.24. (Bellm Decl. ¶ 3.) Considering defendant's relative conduct compared to other defendants in this case, of the parties agree that defendant should be responsible for $126,707.62 (50% of the total loss replacement cost of the three vehicles), with joint and several liability with any other co-defendants the Court orders to pay restitution.[3]

### F.    Fine, Forfeiture, and Special Assessments

The government agrees with Probation that defendant is unable to pay a fine, and therefore that no fine should be imposed. (PSR ¶¶ 98-99.) Defendant must pay a mandatory $25 special assessment for each count of conviction. (PSR ¶ 112.) The indictment did not include criminal forfeiture allegations, and the government is not pursuing criminal forfeiture.

### V.    CONCLUSION

For the foregoing reasons, the government respectfully requests a sentence of 4 years' probation; no fine; restitution in the amount of $126,707.62; and a $25 special assessment. The government submits

---

[3] The victim should not receive compensation in excess of the total restitution amount of $253,415.24 regardless of the source. Any amounts paid by one defendant should accordingly be credited against the restitution obligation of all jointly liable defendants, and the Clerk of the Court and the United States can ensure that the victim's aggregate recovery does not exceed the total amount of restitution ordered.

that this sentence is "sufficient, but not greater than necessary, to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2)."

18 U.S.C. § 3553(a).

Dated: June 29, 2026                    Respectfully submitted,

                                        TODD BLANCHE
                                        Acting Attorney General

                                        BILAL A. ESSAYLI
                                        First Assistant United States
                                        Attorney

                                        IAN V. YANNIELLO
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                        _____/s/ *Sebastian Bellm*_____
                                        JENNA W. LONG
                                        LANA MORTON OWENS
                                        SEBASTIAN BELLM
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**DECLARATION OF SEBASTIAN BELLM**

I, Sebastian Bellm, declare as follows:

1.    I am an Assistant United States Attorney ("AUSA") in the Central District of California and am assigned to represent the government in United States v. Palermo et al., CR No. CR-731(B)-JFW-4.

2.    Attached as **Exhibit A** is a true and correct copy of a victim impact statement written and submitted by California Highway Patrol Sergeant P.R. who was present during the charged offense on June 8, 2025.

3.    I have reviewed materials provided by the California Highway Patrol regarding damage to their property -- vehicles – during the charged offense.  According to California Highway Patrol, the three vehicles damaged were totaled and the cost of the damage sustained was $80,972.64, $86,221.30, and $86,221.30.   The total loss amount is $253,415.24.

4.    On or about June 17, 2026, the government provided the defense with restitution calculations provided by CHP. On or about June 29, 2026, I conferred with defense counsel Andrew Cowan.  Mr. Cowan confirmed that the defendant does not object to the government's restitution calculation and agrees with a restitution amount of $126,707.62.

\\

\\

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on June 29, 2026.

_____
SEBASTIAN BELLM
Assistant United States Attorney
General Crimes Section
Criminal Division

2