LAW OFFICES OF KAREN L. GOLDSTEIN
Karen L. Goldstein (State Bar No. 229965)
1800 Vine Street
Los Angeles, CA 90028
Telephone: 888.445.6313
Facsimile: 323.467.7229
kgoldstein@klgcriminaldefense.com

Attorney for Defendant
BALTO MONTION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR 25-731-JFW-7 |
| | ) |
| | ) |
| Plaintiff, | ) **DEFENDANT BALTO MONTION'S** |
| | ) **SENTENCING POSITION;** |
| | ) **EXHIBITS A-U IN SUPPORT.** |
| v. | ) |
| | ) |
| | ) |
| BALTO MONTION, | ) |
| | ) **Sentencing Date**: July 20, 2026 |
| | ) **Courtroom**: 7A |
| Defendant. | ) **Time:** 8:00am |
| | ) |
| | ) |
| | **Before the Honorable John F. Walter** |

TO THE HONORABLE JUDGE JOHN F. WALTER AND ASSISTANT UNITED STATES ATTORNEYS LANA OWENS, JENNA LONG, AND SEBASTIEN BELLIM:

Defense counsel, Karen L. Goldstein, on behalf of Balto Montion, hereby submits Defendant Balto Montion's Sentencing Position.

//

//

//

DEFENDANT MONTION'S SENTENCING POSITION

The position paper is based on the attached memorandum of points and authorities, all files and records in this case and any further information, evidence, or argument, that may be presented at the hearing.

Dated: July 6, 2026                                    */s/ Karen L. Goldstein*
                                                       Attorney for Balto Montion

DEFENDANT MONTION'S SENTENCING POSITION

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BALTO'S APOLOGY LETTER IS THOUGHTFUL AND SINCERE...................2

III.   BALTO HAS ALREADY BEEN SEVERELY PUNISHED FOR HIS MISTAKES...............................................................................................................3

IV.    HE HAS NO PRIOR CRIMINAL HISTORY..........................................................4

V.     HE IS A FIRST GENERATION IMMIGRANT WHO WAS RAISED WITH LIMITED MEANS BUT A STRONG WORK ETHIC .............................................4

VI.    BALTO IS A TALENTED AND PASSIONATE PHOTOJOURNALIST AND VIDEOGRAPHER WHO IS RESPECTED BY OTHER ARTISTS IN THE COMMUNITY.........................................................................................................5

   A.    Balto Has Already Experienced Significant Professional Setbacks Because of His Actions In This Case ..............................................................................6

VII.   BALTO HAS LEARNED FROM HIS MISTAKES AND SHOWN GENUINE POST-OFFENSE REHABILITATION..................................................................7

   A.    He Recently Completed Training at a Trade School Which Expanded His Skillset .........................................................................................................7

VIII.  BALTO HAS TREMENDOUS SUPPORT FROM FRIENDS, FAMILY, AND HIS LOCAL COMMUNITY.................................................................................9

IX.    THE GOALS OF SENTENCING FAVOR BALTO BEING SENTENCED TO PROBATION........................................................................................................11

   A.    The Seriousness of the Crime and Specific Deterrence Have Already Been Accounted For .....................................................................................11

   B.    General Deterrence Has Also Been Accounted For With Two Felony Convictions, A Prior Jail Sentence, And Being Under State and Federal Supervision ..................................................................................................12

   C.    Balto's Conduct Did Not Involve Arson or A Direct Assault on the Officers so the Proposed Sentence Also Accounts for Sentencing Disparity ...................13

LAW OFFICES OF KAREN L. GOLDSTEIN

X.    CONCLUSION .................................................................................................14

.

DEFENDANT MONTION'S SENTENCING POSITION

LAW OFFICES OF KAREN L. GOLDSTEIN

# TABLE OF AUTHORITIES

**U.S. Supreme Court**

*Pepper v. United States*, 562 U.S. 476, 477-478 (2011)……………………………….9

**Ninth Ciruit**

*United States v. Edwards*, 595 F.3d 1004, 1011 (9th Cir. 2010)…………………8

**Other Federal Courts**

*United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008)………..………8

**Statutes and Codes**

U.S.C. §3553(a)…………………………………………………………………3,12,23,14
Cal. Penal Code § 245(a)(1)………………………………………………………….3,fn1
Cal Penal Code § 594………………………………………………………………...3,fn1
Cal. Penal Code § 1192.7(c)(23)………………………………………………….3,fn2
Cal. Penal Code § 667(e)(1)……………………………………………………….3,fn3
Cal. Penal Code § 667©(2)…………………………………………………….

**Other Materials**

United States Sentencing Commission, *The Past Predicts The Future: Criminal History And Recidivism Of Federal Offenders*, March 2017………………………4

DEFENDANT MONTION'S SENTENCING POSITION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Balto Montion ["Balto"] is ashamed and embarrassed by the actions he took on June 8, 2025.  At 25-years-old, he made a serious mistake.  Balto understands the difference between a peaceful protest and the reckless actions he took on that day which included throwing multiple rocks and a liquor bottle towards the freeway where CHP officers had taken cover as well as recording and posting it all to social media.

Balto offers no excuses because his actions were wrong.  He has acknowledged the wrongfulness of his actions and apologized for his behavior.  This is the first time Balto has ever been in trouble with the law and he is committed to it also being the last.

Over the past year, Balto has been punished severely punishment for his poor choices.  In state court, where he was prosecuted first, he spent over three months in the county jail.  It was terrifying to him.  He now has a felony strike conviction which will remain on his record for the rest of his life.  And with the conviction in this case, Balto is a convicted felon twice over.  All of this has deeply affected Balto and made him understand in a very real way that his reckless actions have serious consequences.

However, since the offense conduct over a year ago, and while on pretrial release, Balto has taken a lot of positive steps which show that he can thrive out in the community.  He has attended and completed a trade school where he earned additional mechanical skills to supplement his promising career in photojournalism and videography.  (Exh. B; C).  He has also been supervised successfully since February 2026, both on pretrial release and on state felony probation.  Balto will humbly accept whatever sentence this Court imposes but hopes that he has proven to the Court that he has learned from his mistakes of the past.

Taking into consideration the totality of circumstances in this case, a sentence of two years probation is a just and appropriate sentence which meets every goal of sentencing under 18 U.S.C. §3553(a) and also takes into account the intent of the parties in the negotiated plea bargain which calls for a non-custodial sentence.  This sentence would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing.  18 U.S.C. §3553(a).

## II.   BALTO'S APOLOGY LETTER IS THOUGHTFUL AND SINCERE

Balto has accepted responsibility and shown insight into the wrongfulness of his behavior.  In his written apology letter, he took the time to reflect on what the CHP officers must have felt on the day of the incident.  He writes,

> Since my arrest, I have spent a great deal of time reflecting on the situation from the perspective of the officers involved.  At the time, I was focused only on my own emotions and frustrations. I was not thinking about what the officers were experiencing. Looking back, I can see that they were placed in a highly stressful and dangerous situation. I can imagine how much fear and stress they faced as well as thinking of their loved ones at home.

This is a not only a clear acceptance of responsibility and remorse but a thoughtful one showing empathy for the officers affected by his actions.  Balto acknowledges the danger his actions caused and how scared the officers must have been. He reflects on how they must have been focused on returning home safely to their family.  Balto's words also reflect a broader positive theme: he has experienced growth over the past year.  His reflection and acknowledgement of responsibility further demonstrate that he can safely and successfully be supervised out in the community.  Most importantly, though, Balto's letter demonstrates that he is an asset to the community.

In sum, Balto's actions and words since the offense conduct show both maturity and acceptance which support the proposed sentence.

### III.    BALTO HAS ALREADY BEEN SEVERELY PUNISHED FOR HIS MISTAKES

Balto has been forced to realize that his life has been forever changed because of his actions in this case.  He has already been severely punished for his mistakes.  Balto now has a permanent criminal record in two jurisdictions.  He was convicted in the Los Angeles Superior Court of not just a felony but a strike under the California Three-Strikes law.[1]  This means that he may not be able to reduce the offense to a misdemeanor in the future.  It also means if he were convicted of *any* felony in the future that his sentence would be doubled and he would serve his sentence in the state prison and serve 80% of the sentence (not the typical 50% sentence for many state offenses).[2]  Moreover, if Balto were to be convicted of a felony in the future, he would be presumptively ineligible for probation.[3]  Further, as part his state felony conviction plea agreement, he has five years in prison suspended in execution which means that if he were to violate his state probation, he will be sentenced to five years in prison without judicial discretion to impose a lesser sentence.  (Exh. Q, Certified Minute Order from 1.30.26, *P v. Montion*, 25CJCF04960-01).

Additionally, Balto served over three months in the county jail.  The jail time was eye-opening and terrifying for him as someone who had never been in trouble before, let alone spent any time in custody.  Lastly, as part of his state court sentence, he is currently being supervised on formal probation for two years.  This requires monthly check-ins with a probation officer, travel restrictions, random drug testing, random search and seizure, regular house visits, and seeking permission for housing and employment, among other rigorous terms of

---

[1] He pleaded to felony assault with a deadly weapon under California Penal Code § 245(a)(1) and felony vandalism under Cal. Penal Code § 594; see Cal. Penal Code § 1192.7(c)(23).
[2] California Penal Code section 667(e)(1).
[3] California Penal Code section 667(c)(2).

LAW OFFICES OF KAREN L. GOLDSTEIN

supervision. And, if he fails to comply with the terms of probation, or is convicted of another crime while on probation, he will be sentenced to five years in state prison. There is no margin for error.

As such, Balto has already received significant punishment for the same offense conduct in this case. This is another strong mitigating factor in favor of the proposed sentence.

## IV.    HE HAS NO PRIOR CRIMINAL HISTORY

Balto has no prior criminal history prior to the instant charges. His actions on June 8th were his first foray into the justice system. As such, he is a true first-time, zero-point offender with zero criminal history points in criminal history category I. (PSR, p13 56).[4] This also means that Balto is statistically unlikely to commit future crimes as the empirical data demonstrates that defendants with zero criminal history points have significantly lower recidivism rates. United States Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders*, March 2017. It further shows that Balto's participation in the offense conduct was truly aberrational and unlikely to re-occur. Balto's lack of any prior criminal history is another factor in support of the requested non-custodial sentence.

## V.    HE IS A FIRST GENERATION IMMIGRANT WHO WAS RAISED WITH LIMITED MEANS BUT A STRONG WORK ETHIC

Balto is a first-generation Mexican-American. Both his parents were raised in Mexico and neither achieved more than a middle school education. (PSR, p16 ¶76). As a young child, he saw both his parents working long hours and struggling to get by. His father worked for a company which measured water chlorine, and did constructions jobs on the weekend. (PSR p14 ¶62; ¶66). His mother worked seasonal jobs as a berry picker until she became severely injured and after several

---

[4] As explained above, he only has a state felony strike conviction based entirely on the same offense conduct at issue here.

DEFENDANT MONTION'S SENTENCING POSITION

LAW OFFICES OF KAREN L. GOLDSTEIN

unsuccessful surgeries ended up on disability.  (PSR p14 ¶66).  There were never any small luxuries or extra spending money for him, or the family, but his home was always one filled with love and support.  At times the family relied on food stamps and there were some Christmas times where no gifts could be exchanged but Balto always felt lucky for what he did have: a supportive family.  (PSR, p14 ¶65).

Balto was raised in a mobile home in Santa Cruz where he did not have his own room and shared a tent with his brother in one of the common areas.  (PSR, p14 ¶65).  He was raised to work hard at a young age.  And by middle school, he accompanied his father on the weekend to construction jobs to help earn extra income for the family.  Balto knows that his parents worked incredibly hard to set a good example for him and he is ashamed to know that he strayed so far from the core positive values which they instilled in him.

## VI.  BALTO IS A TALENTED AND PASSIONATE PHOTOJOURNALIST AND VIDEOGRAPHER WHO IS RESPECTED BY OTHER ARTISTS IN THE COMMUNITY

Balto is a talented photojournalist, videographer who is respected by other artists in the community.  At just 25, he has already earned several grants which have supported some of his photojournalism projects.  (PSR, p17 ¶74).  In the past few years, he traveled to Thailand, Tiajuana, and Mexico City, courtesy of different grants, where he was able to explore the local communities in his work  (PSR, p17 ¶74).

As a close friend writes, Erina Chavez writes, "His good nature rubs off on you and seeing the world through his eyes, in his photographs, makes you want to live and see the world too. He captures the beauty and chaos of life and shares it. He creates spaces of familiarity, comfort and peace."  (Exh. E, Letter from Serina Chavez).

//
//
//

DEFENDANT MONTION'S SENTENCING POSITION

LAW OFFICES OF KAREN L. GOLDSTEIN

As Mike De Boer, the owner of a local photo lab adds,

> From the moment he first appeared in the store It was clear to me and my team that this young man was unusually talented in photography; his photos showed a grittiness and realness that is generally lacking in mainstream media. His photography during the Covid pandemic was priceless, capturing the bleak state of society and people's responses to it…He participated in a very well-received Black and White photo show and was sponsored by the Santa Cruz Arts Council because of his amazing images. (Exh. O. Letter from Mike de Boer.)

Another colleague in the entertainment industry, Dylan McGale explains how Balto did tremendous work while working on a commercial video, "Bringing Balto on set for the first time made *me* look good because of how hard he worked to show he deserved to be there. There were other production assistants who made full day rates but Balto was there for free, working circles around them." (Exh. I, Letter from Dylan McGale). Dylan also explains that he brought Balto to work on another commercial "where he helped manage 40+ background extras and everyone commented on how helpful he was as we shot late into the night. Balto has more than earned his spot on any crew I'm hiring and I'm eager to see him expand his capabilities and apply this knowledge when it comes to building his own crews." (Exh. I, Letter from Dylan McGale).

Lastly, Balto's photographic works really speaks for themselves. In each of the attached photos, he has chosen to capture quiet and often deeply personal moments ranging from children play fighting in the street, to a Thai boxer mid-kick at a boxing studio, to a displaced refugee in a camp, to a U.S. soldier being deeply embraced by his family in a hug clearly returning home here you can truly feel the intensity and joy of the reunion. (Exh. R-U).

### A. Balto Has Already Experienced Significant Professional Setbacks Because of His Actions In This Case

Despite Balto's undeniable talent, the convictions in this case have already caused him to miss out on significant career opportunities. As Mr. Romero states in

his letter, there were, "several professional opportunities in the video production field that he could not extend to Mr. Montion because of this matter." (Exh. D, Letter from Max Romero).  Mr. Romero further explains that these opportunities would have had a meaningful impact on Mr. Montion's life and his professional future.  Similarly, Dylan McGale writes how Balto missed out on a major career opportunity while he was serving jail time in this case.  Mr. McGale explains that Balto was unable to be a part of a "life changing tour across the country with Warner Music recording artist" because he was in jail.  (Exh. I, Letter from Dylan McGale).

Unfortunately, this is merely a taste of what is to come.  Career opportunities will be more limited for Balto based on his felony convictions in this case.  Balto understands that his own actions resulted in these potential lost opportunities; however, this is nevertheless a factor which the Court can consider and which mitigates in favor of a non-custodial sentence.

**VII. <u>BALTO HAS LEARNED FROM HIS MISTAKES AND SHOWN GENUINE POST-OFFENSE REHABILITATION</u>**

Balto made grave mistakes in this case but has also learned from them.  He has shown significant post-offense rehabilitation and demonstrated to the Court exactly what can be expected of him in the future out in the community.

**A. He Recently Completed Training at a Trade School Which Expanded His Skillset**

Most recently, in addition to learning hard lessons from the case, he has also taken concrete steps towards job stability.  Balto graduated from Dirt Bags Academy – a trade school where he learned about motorcycle mechanics, welding, auto body repair and shirt printing.  (Exh. B, Trade Academy Certificate; Exh. C Build Within Pre-Apprenticeship Program); *see generally* DIRTBAGS ACADEMY, https://dirtbagscalifornia.com/pages/dirtbags-academy (last visited June 24, 2026).

DEFENDANT MONTION'S SENTENCING POSITION

This academy has a unique motto focused in personal growth as well as on teaching trade skills. The academy refers to itself as, " a grassroots community shop in the heart of Long Beach…dedicated to supporting local youth who face barriers such as academic disengagement, limited opportunities, or social marginalization. Through mentorship, hands-on skill development, and real-world community projects, Dirtbags Academy provides a safe and inclusive environment where young people can explore new skills, discover career pathways, and build the confidence to succeed." *Id*. The Academy specifies, "Our program blends practical trade training with personal growth, giving participants the tools to excel both professionally and personally."

Balto has greatly benefitted from the program. He intends to use these newly acquired skills and incorporate them with his love of photography and art to help youth who come from disadvantaged backgrounds like his own.

Importantly, the Ninth Circuit has specifically recognized the importance of good behavior when time has passed since the offense conduct. It has even cited to this factor as part of its justification for imposing a probationary sentence. "[L]ook[ing] at the record with [Edwards] . . . I'm satisfied that somebody who committed these offenses . . . roughly nine years ago, and has lived the life that he has lived in the interim despite all the things that have gone on, I don't think there's a very good likelihood that he would engage in this kind of business in the future . . . ." *United States v. Edwards*, 595 F.3d 1004, 1011 (9th Cir. 2010).

Other District Courts have also held that significant weight should be afforded to defendants who have successfully served a period of pretrial supervision and when a significant period of time has passed between the offense conduct and sentencing. *See e.g., United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008). Just as in *Edwards* and *Johnson*, Balto's period of good behavior during

DEFENDANT MONTION'S SENTENCING POSITION

pretrial release and the amount of time which was passed since the offense conduct occurred provides the Court with a reliable indicator of what to expect.

The Supreme Court has also emphasized the extreme importance of post-offense rehabilitation by concluding that this consideration could justify a downward variance, noting, "post-sentencing rehabilitation evidence may be highly relevant to several § 3553(a) factors that district courts are required to consider at sentencing…Most fundamentally, that evidence provides the most up-to-date picture of his 'history and characteristic' and 'also sheds light on the likelihood that…[the defendant]…will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence." *Pepper v. United States*, 562 U.S. 476, 477-478 (2011). In conclusion, Balto's post-offense rehabilitation and good behavior further support the proposed non-custodial sentence.

## VIII. BALTO HAS TREMENDOUS SUPPORT FROM FRIENDS, FAMILY, AND HIS LOCAL COMMUNITY

Letters flooded in to support Balto from the local community in Santa Cruz, as well as from his friends, family, and other local artists. Nearly every single letter acknowledges that the charged protest conduct is not who Balto is at his core and does not reflect who he is as a person. In fact, many letters describe in great detail the opposite temperament. Balto is described as caring, very generous, peaceful, and interested in helping the local community through public service as well as art. A few of the letters reference specific acts of kindness towards others in times of need as well as the adoration he always showered on his elderly French bulldog, Maggie, who recently passed away.

For example, a friend, Qinyi Zhou, writes, "Through our friendship, I have come to know him as a thoughtful, responsible, and caring person. One thing that especially stood out to me was the way he cared for his dog, Maggie. He was always patient, attentive, and loving toward her, which reflected the kindness and

DEFENDANT MONTION'S SENTENCING POSITION

sense of responsibility I have also seen in his relationships with other people." (Exh. G, Letter from Qinyi Zhou).

His cousin Delaware Montion writes, "Balto has also had a positive influence on my life. As an older cousin, he encouraged me to think more openly about art, creativity, and the experiences of people whose lives may be very different from my own. He challenged me to be less judgmental toward those facing difficult circumstances and to approach others with greater understanding and compassion. These lessons have remained with me and shaped how I view the world today." (Exh. J, Letter from Delaware Montion.)

Fellow artist, and friend Jordan Tate explains, "What has always stood out to me most about Balto is his selflessness.  He consistently shows up for others without expecting anything in return.  Whether he is helping document someone's work, contributing his time and energy to a project, or simply offering support to friends, he approaches people with generosity and enthusiasm. He brings a vibrant, positive energy into every room he enters and has a unique ability to make people feel welcomed, valued, and encouraged."  (Exh. K, Letter from Jordan Tate).

Rodolfo Cardenas describes Balto's contributions to  the local Watsonville community.  "He is a positive and engaging member of the local art community in Watsonville….Balto inspires many of my colleagues and myself to excel with our creative ambitions and connect more with our community."  (Exh. M, Letter from Rodolfo Cardenas).

Dillan Conniff expresses how impressed he was with Balto's worth ethic as an artist, "as an artist and founder of Stone/Age Art Book Publication, I have had the opportunity to collaborate with Sean on an upcoming book project. His work ethic has impressed me greatly" and always kept things "organized and on schedule. At the same time, he has been balancing multiple responsibilities, including filming and editing video projects while attending trade school."   Dillan

10

DEFENDANT MONTION'S SENTENCING POSITION

LAW OFFICES OF KAREN L. GOLDSTEIN

Conniff also notes how Balto recently completed a trade school program "which speaks to his commitment, discipline, and determination to improve his future." (Exh. F, Letter from Dillan Conniff).

Bryce Still writes that Balto has an "excellent eye for photography" and that, Balto has been his "go to photographer and videographer" since his birthday the year before. He further underscores how Balto's "reliability, eagerness to learn, and creativity sets him apart from the rest. (Exh. P, Letter from Bryce Stiell).

Lastly, Max Romero, who works in the video production industry, states that Balto carries himself "with positivity, professionalism, and genuine drive. He further provides details about how he has invited him onto his sets on multiple occasions, and "without exception he has conducted himself with the utmost professionalism. He is reliable, respectful, and a true pleasure to work with." (Exh. D, Letter from Max Romero).

Balto's familial and community support is also important because it will help ensure that he will continue to be successful while being supervised out in the community.

## IX.   THE GOALS OF SENTENCING FAVOR BALTO BEING SENTENCED TO PROBATION

### A. The Seriousness of the Crime and Specific Deterrence Have Already Been Accounted For

The seriousness of the offense has already been accounted for in many ways. First, Balto has acknowledged that the conduct in this case is very serious and has accordingly apologized for his behavior. Further, he has already been punished severely for his actions. He spent over three months in custody and is a convicted felon twice over. Further, as a convicted felon, trying to find a corporate path, such as working for a major magazine, or newspaper, in photojournalism, or for a major record label in the music industry, will be difficult, if not impossible. As aptly

described in Max Romero's letter of support, Balto has already been denied job opportunities based on his convictions in this case.  Mr. Romero writes, "It is difficult to watch someone of his talent and determination be held back from reaching his full potential."  (Exh. D, Letter from Max Romero).

For this reason, in combination with all the other factors discussed above, a probationary sentence is sufficient to meet this goal of sentencing and all the other goals under 18 USC § 3553(a).  The punishment already meted out more than adequately reflects the seriousness of the offense.  18 USC § 3553(a) (2)(A).

In terms of specific deterrence, this goal has also been adequately met.  Balto is terrified of going back to custody.  Further, his fear is not the typical fear which any defendant might have for someone who has not been in trouble before.  Presently, he is married to a man and although Balto and his husband are separated, he spent his months in the county jail fearful that someone would learn about his sexual orientation and sexually assault him.  (PSR, p16 ¶80).

Lastly, with respect to specific deterrence, Balto is a zero-point, first time offender which means that he is already statistically unlikely to recidivate.  Further, the supportive words of his local community and family show that he has  a strong network to support him while being supervised out in the community.  All these aspects of Balto's individual characteristics illustrate why the goal of specific deterrence is more than adequately met with the proposed non-custodial sentence.  18 USC § 3553(a)(2)(C).

**B. General Deterrence Has Also Been Accounted For With Two Felony Convictions, A Prior Jail Sentence, And Being Under State and Federal Supervision**

In terms of general deterrence, the existing felony strike conviction in state court, the county jail time he already served, and the felony conviction in federal court, are more than sufficient to deter potential future offenders from engaging in

12

DEFENDANT MONTION'S SENTENCING POSITION

similar behavior.  18 USC § 3553(a)(2)(B).  All these aspects of punishment demonstrate that this type of destructive protest conduct is not tolerated and is being prosecuted aggressively.  Lastly, serving an additional two-year period of probation, as he is being simultaneously supervised for two years of formal probation in state court, also sends a strong message to potential other offenders. Balto is strictly regulated and monitored, will continue to be so for years, and has no room for misstep.  The convictions, and the prior jail sentence, in conjunction with continued federal and state strict supervision, meets the goal of general deterrence.

### C. Balto's Conduct Did Not Involve Arson or A Direct Assault on the Officers so the Proposed Sentence Also Accounts for Sentencing Disparity

Balto's conduct in this case is serious but still less severe than several of his co-defendants.  He did not directly assault, injure, or hurt any of the officers.  He never engaged in arson of any type or the throwing of any type of fiery debris either towards the CHP officers or onto a CHP vehicle.  The rocks he threw were aimed at the freeway and none of the large rocks hit any of the CHP officers.[5]

By contrast, Defendant Vegas picked up "debris including cardboard and vegetation – and fireworks, lighting them on fire and dropping them over the railing of the Overpass aiming for a nearby CHP vehicle, which was within feet of CHP officers trapped under the Overpass" (Dkt. 237,  8:15-19).  He also threw burning debris onto a vehicle and assisted others multiple times who were lighting debris on fire over the overpass railing.  (Dkt. 237, 8: 22-23). Mr. Vegas also "lit a large piece of cardboard on fire, held it over the railing to line it up to land on the hood of a CHP vehicle, which it did after defendant dropped it." (Dkt. 237, 8:25-28).

---

[5] One of the rocks hit the hood of a CHP vehicle which had already been abandoned and desecrated by other protestors.

13

DEFENDANT MONTION'S SENTENCING POSITION

Co-defendant Palermo also engaged in more serious arson-related conduct. He lit debris near the overpass and dropped it on a CHP vehicle which was within feet of CHP officers trapped under the overpass. (Dkt. 224, 8:12-15). He also threw lit debris towards the CHP officers and "attempt[ed]…to inflict great bodily injury on them." (Dkt. 224 8:15-18).

Co-defendant Flores brought lighter fluid with him to the protest. He poured one bottle of lighter fluid on a law enforcement vehicle already on fire which caused the fire to grow significantly. (Dkt. 304, 8:24-25). Then he assisted another protester to aim his lighter fluid on the same law enforcement and then poured a second bottle of lighter fluid on the same flaming vehicle engulfed in flames. (Dkt. 304, 9:1-2). Flores then returned to the same part of the overpass and with the help of another individual threw an electric scooter onto the same burning CHP vehicles. (Dkt. 304, 9:2-4). And he took all these actions knowing there were CHP officers who had taken shelter nearby under the overpass.

Balto took none of the above actions. His actions were misguided and reckless but nevertheless were less violent and destructive than some of his co-defendants. As such the proposed sentence adequately accounts for sentencing disparity. 18 USC § 3553(a)(6).

## X. CONCLUSION

For all the aforementioned reasons, counsel respectfully asks the Court to sentence Balto to two years of probation.

Dated: July 6, 2026                    */s/ Karen L. Goldstein*
                                       Attorney for Balto Montion

14

LAW OFFICES OF KAREN L. GOLDSTEIN