TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
LANA MORTON OWENS (Cal. Bar No. 233831)
Assistant United States Attorney
Deputy Chief, National Security Division
JENNA W. LONG (Cal. Bar. No. 332192)
Assistant United States Attorney
National Security Division
SEBASTIAN BELLM (Cal. Bar No. 359407)
Assistant United States Attorney
General Crimes Section, Criminal Division
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-8692/3547/0119
     Facsimile:  (213) 894-2927
     E-mail:     lana.owens@usdoj.gov
                 jenna.long@usdoj.gov
                 sebastian.bellm@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-CR-731(A)-JFW-7 |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION FOR DEFENDANT BALTO MONTION; DECLARATION OF LANA MORTON OWENS; AGREEMENT REGARDING RESTITUTION |
| v. | |
| ADAM CHARLES PALERMO ET AL., | Hearing Date: July 20, 2026 |
| Defendants. | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jenna W. Long, Lana Morton Owens, and Sebastian Bellm, hereby files its sentencing position for defendant Balto Montion.

This sentencing position is based upon the attached memorandum of points and authorities, the declaration of Lana Morton Owens attached hereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 6, 2026          Respectfully submitted,

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

      /s/ *Lana Morton Owens*
JENNA W. LONG
LANA MORTON OWENS
SEBASTIAN BELLM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

**Contents**

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION.................................................1

II.   DEFENDANTS OFFENSE...........................................1

III.  GUIDELINES CALCULATION.......................................4

IV.   GOVERNMENT'S RECOMMENDED SENTENCE............................4

      A.   Nature and Circumstances of the Offense.................5

      B.   Defendant's History and Characteristics.................5

      C.   Need for Deterrence, to Protect the Public, and to
           Promote Respect for the Law.............................5

      D.   Terms of Supervised Release.............................6

      E.   Restitution.............................................6

      F.   Fine, Forfeiture, and Special Assessments...............7

V.    CONCLUSION...................................................9

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.   INTRODUCTION**

Defendant Balto Montion (hereinafter, "defendant") joined a civil disorder that erupted in downtown Los Angeles on June 8, 2025. Defendant climbed up on a sign on the overpass overlooking United States Highway 101 (the "101") and dropped and threw several large rocks at California Highway Patrol ("CHP") officers on the highway below. For his conduct, defendant pleaded guilty to count seven of the First Superseding Indictment charging him with Obstructing, Impeding, or Interfering with Law Enforcement During Civil Disorder, in violation of 18 U.S.C. §§231(a)(3); 2(a).

The government agrees with the United States Probation and Pretrial Services Office's ("Probation") Pretrial Services Report ("PSR") including the United States Sentencing Guidelines calculations.  The government, however, does not agree with Probation's recommended sentence.  Instead, the government respectfully recommends a sentence of time served, two years' Supervised Release, with an order to pay restitution in the amount of $86,221.30;[1] and the mandatory $100 special assessment is the appropriate sentence in this case.

**II.   DEFENDANTS OFFENSE**

In early June 2025, federal law enforcement officials began conducting immigration enforcement operations throughout the Los Angeles, California area. (Complaint filed in 2:25-MJ-6126-DUTY, Dkt.

---

[1] On June 28, 2026 the parties met and conferred regarding restitution and defendant does not object to this restitution amount. This amount represents the damage caused to a single CHP vehicle on June 8, 2025.

No. 1, also appearing at Dkt. No. 155-2, ¶¶ 4, 9.) During those operations, protests occurred in and around downtown Los Angeles, California. (Id.) While many of the protestors peacefully exercised their First Amendment rights, some individuals directly engaged in violent actions and the assault of law enforcement officers. (Id. ¶¶ 4, 9-11.)

Many of those actions occurred during a civil disorder as defined by 18 U.S.C. § 232(1). (Montion Plea Agreement ¶ 10, Dkt. No. 229; Presentence Investigation Report filed June 15, 2026 (hereinafter "PSR") ¶¶ 10-17.) After protesters walked onto, and blocked all lanes of southbound traffic on the 101, CHP officers attempted to re-open the highway to traffic. (Id.) At this time, a large group of people-—including defendant-—amassed on the Main Street overpass of the 101. (Id.) During the civil unrest on June 8, 2025, multiple CHP vehicles were damaged by rocks, debris, thrown scooters, and lit on fire, while CHP officers had to take cover under the overpass for safety. (Id.) The photograph below depicts this civil disorder.



(Dkt. 155-2 ¶ 12.)

Defendant was amongst the group engaging in this civil disorder, including around 6:30 p.m. to 7:30 p.m., when some of the worst civil disorder occurred. (PSR ¶¶ 15-17.) During this time, while on Aliso Street, defendant threw multiple rocks towards the officers trapped under the Overpass.  Defendant also threw an empty glass bottle towards the same officers. Later, while on the Overpass, defendant dropped at least three large rocks over the Overpass railing knowing that there were CHP vehicles below and CHP Officers feet away under the Overpass. Some of the rocks thrown by defendant did hit at least one CHP vehicle. Defendant knowingly engaged in the conduct intending that it obstruct, impede, and interfere with the law enforcement officers and their duties.

The June 8 civil disorder stood apart in its magnitude. A sergeant in the California Highway Patrol with nearly three-decades in law enforcement wrote a statement about how this incident stood apart and the impact it had on him and his son.  (PSR at ¶ 22-23.) His experience underscores how violent this incident became and the deep toll it took on all law enforcement present:

> I have been in law enforcement for over 26 years, and this was one of the most violent experiences I have been involved in. Throughout the evening after this incident, while still dealing with violent protestors, I pulled countless shards of glass from my skull and face. Several were deep enough to draw blood. Upon arriving home that night after midnight, I woke up my son (14) and had him use tweezers to pull large shards of glass out of by back and areas of my body I could not reach, while explaining to him what had happened. The mental toll it took on my son was tough to watch as well. I spent the next two weeks responding to Los Angeles every day to keep the peace and restore order to the city

(PSR at ¶ 23.) On April 29, 2026, defendant entered a plea of guilty to Count Seven pursuant to a plea agreement. (Dkt. Nos. 229, 250.)

## III. GUIDELINES CALCULATION

The parties and Probation agree that for defendant's offense of obstructing and impeding federal officers, defendant's base offense level is 10 under U.S.S.G. § 2A2.4(a). (Montion Plea Agreement ¶ 12; PSR ¶¶ 30-50.) Because defendant used a dangerous weapon in the commission of this offense—-namely multiple large rocks—-a three-level increase applies under U.S.S.G. § 2A2.4(b)(1)(B). (Id.) After a two-level reduction in offense level due for defendant's timely acceptance of responsibility under U.S.S.G. § 3E1.1(a), defendant's total offense level is 11. (Id.)

Defendant is in criminal history category I with zero criminal history points. (PSR ¶¶ 52-53.) U.S.S.G. § 5A. Despite defendant's lack of criminal history points, defendant is ineligible for the zero-point offender reduction under U.S.S.G. § 4C1.1 because defendant used violence[2] in connection with the offense. U.S.S.G. § 4C1.1(3).

With a total offense level of 11 and a criminal history category of I, the applicable Guidelines range is 8 to 12 months' imprisonment. U.S.S.G. § 5A.

## IV.    GOVERNMENT'S RECOMMENDED SENTENCE

The government recommends that the Court sentence defendant to a below-Guidelines' sentence of time served, followed by two years of Supervised Release, $86,221.30 restitution, and the mandatory $100 special assessment. The government submits that all fines should be waived given the agreed restitution.  This sentence is appropriate,

---

[2] "Used violence" is not defined by the Guideline or its application notes. "Crime of violence" as defined by U.S.S.G. § 4B1.2(a) includes any crime including the "use, attempted use, or threatened use of physical force against the person of another."

4

reasonable, and not greater than necessary to account for the factors the Court must consider under 18 U.S.C. § 3553(a).

### A.    Nature and Circumstances of the Offense

Defendant pleaded guilty to obstructing and impeding federal officers during a civil disorder. Defendant admits to throwing rocks and a bottle at CHP officers on the highway below who were seeking safety under the cover of the overpass. Multiple CHP vehicles were destroyed during the civil disorder.

### B.    Defendant's History and Characteristics

The instant offense will be defendant's first criminal conviction, which is accounted for in his criminal history category. Defendant was simultaneously charged by the state for Assault with a Deadly Weapon and sentenced to two years' probation in a California state proceeding.  (PSR at ¶ 55.)  The court should consider defendant's punishment in the state case in imposing the below-Guidelines sentence sought by the government.

Defendant's issues with mental health and substance abuse issues stand in mitigation.  A sentence of a two year term of Supervised Release correctly balances defendant's history and characteristics with the nature and circumstances of the offense.

### C.    Need for Deterrence, to Protect the Public, and to Promote Respect for the Law

A sentence including a two-year term of Supervised Release, following the term of imprisonment that defendant has served to date, will sufficiently promote respect for the law and deter defendant or others from engaging in the same dangerous behavior in the future. On June 8, 2025, defendant could have peacefully protested, as many did; but instead, defendant threw rocks at CHP officers and vehicles.

5

Defendant's time on Supervised Release should come with conditions to assist with his mental health and substance abuse issues.

### D.    Terms of Supervised Release

Here, the Court could sentence defendant to a term of imprisonment, but the government submits a below-guidelines sentence is warranted in this case.  For the reasons stated above, a two-year term of Supervised Release is an appropriate sentence after considering the applicable § 3553(a) factors.  District courts have wide latitude in imposing conditions of supervised release. United States v. Blinkinsop, 606 F.3d 1110, 1118 (9th Cir. 2010); United States v. Weber, 451 F.3d 552, 557 (9th Cir. 2006). A sentencing court even has broad discretion to impose conditions of supervised release not named by statute.  18 U.S.C. § 3583(d) (district court may impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate").

This Court's supervision will be necessary to hold defendant accountable for his actions and to effectively protect the public from any future crimes of defendant.  Given defendant's history with mental health and substance abuse, as noted in the PSR, conditions requiring defendant to abstain from controlled substances (including state authorized marijuana) and testing to ensure compliance are necessary.

### E.    Restitution

Under § 3663A, the Court must order full restitution without regard to defendant's economic situation. 18 U.S.C.§ 3664(f)(1)(A). The Court shall order full and immediate payment of restitution, unless, in the interest of justice, the Court provides for payment on

6

a date certain or in installments. 18 U.S.C. § 3572(d)(1). "Immediate payment of restitution is the general rule." See United States v. Martin, 278 F.3d 988, 1006 (9th Cir. 2002) (finding that the district court did not err in following the general rule because it had information regarding the defendant's financial resources that it had "presumably considered and found insufficient to warrant periodic payments."); see generally United States v. Ross, 310 Fed. Appx. 160, 162 (9th Cir. 2009) (finding that "immediate repayment is the rule" but that "[e]xceptions may be made in the interests of justice, such as when the defendant is not able to make more than nominal periodic payments," and the defendant carries the burden of proving such inability).

Here, the parties have agreed that defendant should be responsible for $86,221.30 in restitution, representing the damage caused to one of the three vehicles damaged during the civil unrest. This restitution order should be joint and several liability with any other co-defendants the Court orders to pay restitution.[3]

### F.    Fine, Forfeiture, and Special Assessments

The government agrees with Probation that defendant is unable to pay a fine, and therefore that no fine should be imposed. (PSR ¶¶ 104-105.) Defendant must pay a mandatory $100 special assessment for each count of conviction. (PSR ¶ 112.) The indictment did not

---

[3] The victim should not receive compensation in excess of the total restitution amount of $86,221.30 for this specific vehicle regardless of the source.  Any amounts paid by one defendant should accordingly be credited against the restitution obligation of all jointly liable defendants, and the Clerk of the Court and the United States can ensure that the victim's aggregate recovery does not exceed the total amount of restitution ordered.

include criminal forfeiture allegations, and the government is not pursuing criminal forfeiture.

//

//

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests a sentence of time served, three years Supervised Release; no fine; restitution in the amount of $86,221.30; and a $100 special assessment. The government submits that this sentence is "sufficient, but not greater than necessary, to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2)."  18 U.S.C. § 3553(a).

Dated: July 6, 2026                    Respectfully submitted,

                                       TODD BLANCHE
                                       Acting Attorney General

                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       IAN V. YANNIELLO
                                       Assistant United States Attorney
                                       Chief, National Security Division


                                       _____/s/ *Lana Morton Owens*_____
                                       JENNA W. LONG
                                       LANA MORTON OWENS
                                       SEBASTIAN BELLM
                                       Assistant United States Attorneys

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

9

### DECLARATION OF LANA MORTON OWENS

I, Lana Morton Owens, declare as follows:

1.    I am an Assistant United States Attorney ("AUSA") in the Central District of California and am assigned to represent the government in United States v. Palermo et al., CR No. CR-731(B)-JFW-4.

2.    I have reviewed materials provided by the California Highway Patrol regarding damage to their property -- vehicles -- during the charged offense.  According to California Highway Patrol, the three vehicles damaged were totaled and the cost of the damage sustained was $80,972.64, $86,221.30, and $86,221.30.   The total loss amount is $253,415.24.

3.    On or about June 17, 2026, the government provided the defense with restitution calculations provided by CHP. On or about June 28, 2026, the government conferred with defense counsel Karen Goldstein.  Ms. Goldstein confirmed that the defendant does not object to the government's restitution calculation and agrees with a restitution amount of $86,221.30, representing the loss of one of the vehicles damaged by defendant's conduct.

\\

\\

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on July 6, 2026.

LANA MORTON OWENS
Assistant United States Attorney
General Crimes Section
Criminal Division

2