TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
LANA MORTON OWENS (Cal. Bar No. 233831)
Assistant United States Attorney
Deputy Chief, National Security Division
SEBASTIAN BELLM (Cal. Bar No. 359407)
Assistant United States Attorney
General Crimes Section, Criminal Division
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-8692/3547/0119
        Facsimile:  (213) 894-2927
        E-mail:     lana.owens@usdoj.gov
                    jenna.long@usdoj.gov
                    sebastian.bellm@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-CR-731(A)-JFW-2 |
|---|---|
| Plaintiff, | AMENDED JOINT STATEMENT FOR DEFENDANT ISMAEL VEGA REGARDING RESTITUTION |
| v. | |
| ADAM CHARLES PALERMO ET AL., | Hearing Date: July 27, 2026 |
| Defendants. | Hearing Time: 8:00 a.m. |
| | Location:    Courtroom of the Hon. John F. Walter |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Lana Morton Owens

and Sebastian Bellm, and defendant Ismael Vega ("defendant"), by and

///

through his counsel of record, John Targowski, hereby files An Amended Joint Restitution Statement for the Court's consideration. This Amended version properly includes the referenced Exhibit.

Dated: July 16, 2026          Respectfully submitted,

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division

_____/s/ *Lana Morton Owens*_____
LANA MORTON OWENS
SEBASTIAN BELLM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA


w/email authorization 7/15/2026
JOHN TARGOWSKI

Attorney for Defendant
ISMAEL VEGA

2

**JOINT STATEMENT**

On June 22, 2026, the Court ordered the government to provide counsel for defendant the evidence that it will rely on in support of its calculation of the amount of restitution that should be ordered by the Court pursuant to the Mandatory Victims Restitution Act of 1996.  (Dkt. 302.)

On or about June 17, 2026, the government shared the restitution calculations provided by California Highway Patrol, the victim in this case to defense counsel.  A true and correct copy of that calculation is attached to the Government's Sentencing Position as Exhibit A. (Dkt. 339-2) Attached hereto as **Exhibit 1** is the emailed communication and attachments.

According to California Highway Patrol, the three vehicles damaged during the civil unrest defendant admits he was a part of were totaled and the cost of the damage sustained was $80,972.64, $86,221.30, and $86,221.30 respectively.  The total loss amount victim CHP is seeking in restitution is $253,415.24.

On or about July 9, July 13 and July 14 the parties met and conferred regarding the issue of restitution.  The parties were unable to reach an agreement regarding restitution.

**GOVERNMENT'S POSITION REGARDING RESTITUTION**

The government submits that defendant is responsible for restitution in the amount of $253,415.24, which represents the losses suffered by CHP on June 8, 2026 as a result of the civil unrest defendant and his co-defendants perpetrated.

In the instant case, defendant and others worked in concert to damage the CHP vehicles.  While not charged with conspiracy, the government submits that the conduct is closely aligned to conspiracy

liability for the purpose of calculating restitution.  Indeed, a civil disorder under 18 U.S.C. § 232 involves the conduct of three or more persons.  The government submits that the Court can and should be guided by conspiracy law in calculating the appropriate restitution in this case.

Where a defendant is convicted of conspiracy, the Mandatory Victims Restitution Act (MVRA) authorizes a district court to hold the defendant jointly and severally liable for all victims harmed through the conspiracy  See United States v. Dadayan, 76 F.4th 955, 958 (9th Cir. 2023) (permitting restitution amount different than Guidelines loss amount) (holding district court did not err by imposing restitution in full amount for loss from conspiracy on particular defendant); United States v. Newsome, 322 F.3d 328, 338 (4th Cir. 2003) ("district court's observation that the determinations of the losses for the proper offense level and for ordering restitution present different questions" is in accordance with the law).  This is because "the MVRA does not focus on "relevant conduct" as defined by the Sentencing Guidelines but rather on the 'offense of conviction' when describing the losses subject to a restitution order."  Newsome, 322 F.3d at 341.

Under the MVRA, 18 U.S.C. § 3663A, a sentencing court shall order "defendant [to] make restitution to the victim of the offense." The MVRA further defines "victim" to mean a person who is "directly and proximately harmed as a result of the commission of an offense."  Id. § 3663A(a)(2).[1]  Under the statute, restitution is

---

[1] The Dictionary Act defines person to includes corporations, 1 U.S.C. § 1, and courts have interpreted the MVRA to include both corporations and the government as victims.  United States v. Ekanem, 383 F.3d 40, 42-43 (2d Cir. 2004).

2

mandatory "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense" and defendant is required to "pay an amount equal to ... the value of the property." Id. § 3663A(b).

Accordingly, under the MVRA, each member of a conspiracy that in turn causes property loss to a victim is responsible for the loss caused by the offense. "[T]he MVRA requires that a court enter an order of full restitution when the loss is caused by a property offense, and the focus of the court in applying the MVRA must be on the losses to the victim caused by the offense." Newsome, 322 F.3d at 341 (holding co-conspirator responsible for all losses conspiracy caused, not just losses incurred while he was involved (which were lower), and holding this approach comports with legislative intent to fully compensate victims) (emphases in original); see United States v. Laney, 189 F.3d 954, 964-66 (9th Cir. 1999) (holding that for purposes of ordering restitution under a comparable statute, losses caused by a conspiracy include "not only those resulting from the defendant's individual actions, but also others caused by the conspiracy itself"). This is because "Congress intended restitution to be tied to the loss caused by the offense of conviction," not defendant's personal participation. Hughey v. United States, 495 U.S. 411, 418, (1990).

In Newsome, for example, four defendants were convicted of a conspiracy to cut down trees in a national forest, resulting in a total loss of $248,459. Newsome, 322 F.3d at 341 (quoting Hughey, 495 U.S. at 418). Defendant Newsome joined the conspiracy late and was found to be responsible for only $32,321 of the loss under the Sentencing Guidelines, but he was found responsible for the full loss

amount under the MVRA because that was the amount of loss the "conspiracy caused the" victim.  Newsome, 322 F.3d at 342.

The same principle applies here.  Defendants Palermo, Vega and Flores all used fire to damage the CHP vehicles, as well as threw rocks and other objects at the cars to cause damage.  Defendant was successful, the cars were a total loss, unusable.

Defendant's proposal, that he only be responsible for 50% of the total damage does not adequately address defendant's role in the conduct.[2]  Unlike some of the more minor participants, defendant picked up a piece of cardboard, lit it on fire, and intentionally dropped it onto a CHP car, he then threw multiple rocks.  Importantly, CHP is entitled to payment of full restitution for the loss resulting from defendant and the codefendant's conduct.

Here, defendant is not challenging whether the loss occurred, or that the damage was a result of the civil disorder defendant admitted he actively participated in.  Moreover, defendant does not even challenge the total amount, merely how much he should be responsible for.

---

[2] While the government could seek full restitution against each defendant, the government has tried to strike a more balanced approach and placed the defendants in this case into three categories, those that used fire and/or had a more leadership role, those that threw multiple objects targeting law enforcement officers and caused damage, and those that threw objects but had a more minor role.  For each, the government has attempted to reach a restitution agreement.  Defendant Flores, for example, has agreed to pay full restitution of $253,415.24; defendants Coreas and Roldan have agreed to pay up to 50% of the total loss, namely, $126,707.62.  Defendant Gonzalez Hernandez and Montion, by contrast, have agreed to pay up to $86,221.30, the cost of one of the three damaged vehicles.  The government is in the process of attempting to resolve or seek similar restitution orders for similarly situated defendants.  Defendant Vega, who used fire to damage the CHP cars, falls into the most serious category of defendants.

4

The government submits that any restitution order should be joint and several liability with any other co-defendants the Court orders to pay restitution and cap the total payment from all sources to the total amount of loss.

**DEFENDANT VEGA'S POSITION REGARDING RESTITUTION**

Mr. Vega respectfully disagrees with the government's portrayal of him as one of the three most culpable defendants in this matter along with Palermo and Flores and would leave it to his allocution at sentencing concerning why he should be held less culpable than Defendant Flores, who unlike Mr. Vega, did agree to the $253,415.24 restitution amount. Mr. Vega has offered a similar amount as defendant Coreas, which was $126,707.62 but the government has not found this sum acceptable for the reasons indicated above.

5